IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

TRISHA A. BUCK,

          Plaintiff,

v.                                     CIVIL ACTION NO.   2:24-cv-0221

CORNERSTONE BUILDING BRANDS SERVICES, INC.,

          Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the court is Plaintiff Trisha A. Buck's Motion to Remand Case filed on May 29, 2024. [ECF No. 12]. Defendant Cornerstone Building Brand Services, Inc. ("Defendant Cornerstone") responded in opposition, [ECF No. 17], and Plaintiff timely replied, [ECF No. 25]. For the following reasons, Plaintiff's motion is **GRANTED**, and this action is **REMANDED** to the Circuit Court of Wood County, West Virginia.

I. Background

On April 2, 2024, Plaintiff instituted this action by filing her five-claim Complaint against Defendant Cornerstone in the Circuit Court of Wood County, West Virginia, for (1) hostile work environment, (2) gender discrimination/stereotyping, (3) sexual orientation discrimination under Title VII, (4) wrongful termination, and (5) tort of outrage, after she was terminated from her employment with Defendant

Cornerstone. [ECF No. 1-1, at 8–11]. Defendant Cornerstone then removed the action to this court pursuant to 28 U.S.C. § 1441. [ECF No. 1]. On May 6, 2024, Defendant Cornerstone filed its first Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), [ECF No. 6], arguing that Plaintiff failed to state a claim upon which relief could be granted, [ECF No. 7, at 1–2]. Plaintiff then filed an Amended Complaint on May 16, 2024, providing additional facts, withdrawing her federal cause of action under Title VII, adding a claim for religious discrimination, and joining her former direct manager, Dan Pennock, as a Defendant to the action. [ECF No. 9].

On May 29, 2024, Plaintiff filed the instant Motion to Remand, arguing that the elimination of her federal cause of action and the joinder of Dan Pennock—a non-diverse defendant—requires this court to remand the action back to the Circuit Court of Wood County, West Virginia. [ECF No. 12, at 1]. Defendant Cornerstone responded in opposition, [ECF No. 17], and Plaintiff timely replied, [ECF No. 25]. The motion is now ripe for review.

## II.  Legal Standard

An action may be removed from state court to federal court if it is one over which the district court has original jurisdiction. 28 U.S.C. § 1441(a). "[F]ederal district courts typically have original jurisdiction over cases involving federal questions arising under the Constitution, laws, or treaties of the United States"—*i.e.*, federal-question jurisdiction. *Mayor of Balt. v. BP P.L.C.*, 31 F.4th 178, 197 (4th Cir. 2022) (citing 28 U.S.C. § 1331). District courts also have original jurisdiction over cases where there is complete diversity of citizenship between the parties and the

amount in controversy exceeds $75,000—*i.e.,* diversity jurisdiction. 28 U.S.C. § 1332(a).

Because removal implicates significant federalism concerns, the court must strictly construe removal jurisdiction. *Md. Stadium Auth. V. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005). "If federal jurisdiction is doubtful, a remand is necessary." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) (citing *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993)).

Removal based on diversity jurisdiction requires complete diversity of parties. 28 U.S.C. § 1332; *Strawbridge v. Curtiss*, 7 U.S. 267, 267 (1806). Complete diversity requires that no party involved in a diversity suit share citizenship with any party on the other side. *Id.* "In the federal diversity jurisdiction context, it is well settled that a court determines the existence of diversity jurisdiction 'at the time the action is filed.'" *Prudential Ins. Co. of Am. v. Shenzhen Stone Network Info. Ltd.*, 58 F.4th 785, 794 (4th Cir. 2023) (quoting *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991)). However, where a plaintiff seeks to join a nondiverse defendant *after* removal, such joinder will destroy complete diversity. *See Messinger v. Window World, Inc.*, No. 2:18-cv-00912, 2019 WL 124833, at *1 (S.D. W. Va. Jan. 7, 2019) (citing *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999)).

In such cases, "the district court's analysis begins with 28 U.S.C. § 1447(e)." *Mayes*, 198 F.3d at 461. Section 1447(e) provides a district court with two options when a plaintiff seeks to join defendants after removal whose joinder would destroy

subject matter jurisdiction: "the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e); *see Mayes*, 198 F.3d at 462. These are the only options available to a district court where there is "a post-removal attempt to join a nondiverse defendant; the statute does not allow a district court to retain jurisdiction once it permits a nondiverse defendant to be joined in the case." *Mayes*, 198 F.3d at 462 (footnote omitted). "Under Section 1447(e), the actual decision on whether or not to permit joinder of a defendant under these circumstances is committed to the sound discretion of the district court." *Id.* In determining whether joinder of nondiverse parties should be permitted, the court should consider "the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether the plaintiff has been dilatory in asking for amendment, whether the plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." *Id.* (quoting *Gum v. Gen. Elec. Co.*, 5 F. Supp. 2d 412, 414 (S.D. W. Va. 1998)). "The district court, with input from the parties, should balance the equities in deciding whether the plaintiff should be permitted to join a nondiverse defendant." *Id.* at 463 (citing *Gum*, 5 F. Supp. 2d at 414).

Pursuant to the "fraudulent joinder" doctrine, a district court may "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Id.* at 461. The removing party bears the burden to establish fraudulent joinder by demonstrating either that the plaintiff "committed outright fraud in pleading jurisdictional facts, or that there is *no possibility* that the plaintiff would be

4

able to establish a cause of action against the in-state defendant in state court." *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 218 (4th Cir. 2015) (emphasis in original) (internal quotation marks omitted), *cert. denied*, 576 U.S. 1036 (2015). "The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015) (quoting *Hartley v. CSX Transp. Inc.*, 187 F.3d 422, 424 (4th Cir. 1999)). If a defendant can prove fraudulent joinder has occurred, "that fact should be a factor—and perhaps the dispositive factor—that the court considers in deciding whether a plaintiff may join a nondiverse defendant." *Mayes*, 198 F.3d at 463.

To overcome an allegation of fraudulent joinder, a plaintiff need establish "only a slight possibility of a right to relief." *Mayes*, 198 F.3d at 464 (internal quotation marks omitted); *see also Marshall v. Manville Sales Corp.*, 6 F.3d 229, 233 (4th Cir. 1993) ("A claim need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted."). In determining whether the plaintiff has a possible right to relief, "the court is not bound by the allegations of the pleadings[ ] but may instead 'consider the entire record.'" *AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990) (quoting *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964)). "This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Hartley*, 187 F.3d at 424.

III. Discussion

At the time this action was removed to federal court, both federal-question jurisdiction and diversity jurisdiction existed. *See* [ECF No. 1]. However, once Plaintiff amended her complaint and eliminated her Title VII cause of action, federal-question jurisdiction ceased to exist as all remaining claims arise under West Virginia state law. Although Defendant Cornerstone concedes that the withdrawal of Plaintiff's Title VII claim was proper in light of her failure to exhaust administrative remedies prior to filing suit, it nonetheless argues that the post-removal elimination of that cause of action is "illuminating as to [Plaintiff's] improper reasons for seeking [r]emand." [ECF No. 17, at 12–13]. Specifically, Defendant Cornerstone posits that, with federal-question jurisdiction no longer in play, Plaintiff seeks to join Defendant Pennock as a means of destroying complete diversity and strategically stripping this court of jurisdiction over the case. *Id.* at 13. According to Defendant Cornerstone, this matter "is a textbook case of forum-shopping." *Id.* at 6.

Conversely, Plaintiff alleges that "[t]here is nothing innately deceptive or otherwise improper" in her withdrawal of her Title VII claims and in her decision to join Defendant Pennock in the action. [ECF No. 25, at 1]. Joinder of Defendant Pennock, according to Plaintiff, was made "[a]fter careful consideration of Defendant Pennock's actions" and "is not indicative of forum-shopping gamesmanship, but rather of the fact that modifying Plaintiff's causes of action prompted her to reevaluate the [d]efendants against whom [the] causes of action should be pleaded." *Id.* at 3.

In her Amended Complaint, Plaintiff asserts a new cause of action against Defendant Pennock for the Tort of Outrage—which she classifies as "a viable and well-pleaded cause of action"—based upon his conduct outside of the workplace. *Id.* at 3. Although Defendants Cornerstone argues that this claim is preempted by the West Virginia Human Rights Act ("WVHRA"), Plaintiff disagrees, claiming that Defendant Cornerstone "cannot credibly assert that every instance of Defendant Pennock's outrageous conduct is pre-empted by Plaintiff's WVHRA claims while simultaneously taking the position that [his] conduct *outside the workplace* should not be considered in the analysis of her discrimination claims." *Id.* (emphasis in original). I agree.

To establish fraudulent joinder, Defendant Cornerstone must establish that Plaintiff's jurisdictional statements are fraudulent or that there is no possibility that Plaintiff has any right to relief for her claims against Defendant Pennock. While it is true that Plaintiff could have named Defendant Pennock as a party from the outset, that alone does not establish "outright fraud" in Plaintiff's jurisdictional facts. *Weidman*, 776 F.3d at 218. Likewise, Defendant Cornerstone has failed to establish that Plaintiff has no possibility of a right to relief against Defendant Pennock. Either Defendant Pennock's out-of-work conduct is encompassed within Plaintiff's WVHRA claim or it is not. Defendant Cornerstone argues both sides, simultaneously claiming that Plaintiff's tort claim based on Defendant Pennock's out-of-work conduct is preempted by the WVHRA and that the conduct is irrelevant under the WVHRA. This alternative argument structure may affect Plaintiff's claims through a motion

7

to dismiss, but neither illustrates a clear lack of possibility of a right to relief for joinder purposes. Accordingly, Defendant Cornerstone has failed to establish fraudulent joinder of Defendant Pennock in this case.

Having discerned that Plaintiff's joinder of Defendant Pennock was not dilatory based upon Defendant Cornerstone's arguments, I next consider "whether the plaintiff will be significantly injured if amendment is not allowed," as well as "any other factors bearing on the equities." See *Mayes*, 198 F.3d at 462. Plaintiff argues that Defendant Pennock's action were "undoubtedly the most outrageous and egregious wrongdoing in this case" and that "[h]er case will inarguably be diminished if she is unable to directly pursue redress for [his] malfeasance." [ECF No. 25, at 4]. Additionally, because Defendant Cornerstone may attempt to shield itself from liability for Defendant Pennock's actions by "tak[ing] the position that the acts of [Defendant] Pennock . . . were not in the course and scope of his employment," Plaintiff claims that bringing a tort claim against Defendant Pennock in his individual capacity "is the only way to recover for such conduct." *Id.* This is a sufficient showing of potential significant injury that weighs in favor of permitting the joinder of Defendant Pennock.

As to the final consideration—factors bearing on the equities—there is no strong sway in favor of either party. Both parties have expended time, effort, and resources in litigating the jurisdictional issues in this case. And while Defendant Cornerstone's removal was proper, so, too, was Plaintiff's amendment to her Complaint.

There is, however, one additional issue raised by Defendant Cornerstone for consideration before this court can reach a decision as to remand. In its response in opposition to Plaintiff's Motion to Remand, Defendant Cornerstone alleges that Plaintiff's motion is premature, because Defendant Pennock has neither been served nor appeared in this action, and thus, his state of citizenship is irrelevant in determining this court's jurisdiction. [ECF No. 17, at 13]. This argument is both unconvincing and now moot. Although Defendant Pennock had not yet been served when Plaintiff filed her motion to remand, he has since been served with process. *See* [ECF No. 26 (showing summons being executed on June 23, 2024)].

## IV. Conclusion

For the foregoing reasons, Plaintiff's Motion to Remand, [ECF No. 12], is **GRANTED**. Because this court lacks subject-matter jurisdiction, I **ORDER** that this action be **REMANDED** to the Circuit Court of Wood County, West Virginia. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record, any unrepresented party, and to the Clerk of the Circuit Court of Wood County, West Virginia.

ENTER: July 1, 2024

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE